Newman, J.
Before the Queen City Company filed its application with the Public Utilities Commission it made a request of the Railway Company for a switch connection. Plaintiff in error thereupon addressed a letter to the Railway Company, a copy of which was furnished the Queen City Company, in which it contended that it owned exclusively the siding in question, had acquired an indefeasible right in it for railroad purposes, and *294 that the Railway Company had no right or power to make any connection with this siding. No such claim, however, was made before the Commission, nor is it made here, the sole contention of plaintiff in error being that the Queen City Company, as a condition precedent to having a switch connection with the siding, should be ordered to. pay it, plaintiff in error, one-half of fifty-five hundred dollars, the amount expended by it on account of the change of location and the work done in connection therewith. The Railway Company recognizes the right of the Queen City Company to a switch connection with its siding, but is of the opinion that plaintiff in error should be reimbursed on account of the money expended by it.
Counsel for plaintiff in error insist that the physical layout of the tracks as they existed prior to 1915 is immaterial and that the entire matter should be considered as a “clean slate” as of January 1, 1915, with no switch tracks or connection with any of the properties abutting upon the railroad. They lay great stress upon the statement of the superintendent of the railroad, made before the Commission, which in substance is that if the main-track layout were the same as it was prior to January 1, 1915 — that is, a middle siding between the two tracks with no sidetracks leading to either the plaintiff in error or the Queen City Company — and the latter company were to make application for a switch, the Railway Company would require of it a layout very similar to that which was made and paid for by plaintiff in error. In other words, the expenditure made by plaintiff in error would *295 have been made instead by the Queen City Company.
It is to be presumed that had the Queen City Company or any other company made a request for a switch connection, the Railway Company would have made the same requirement that it made of plaintiff in error. But it does not follow that the Queen City Company would have complied with such a requirement. It would have had the right to make and might have made application to the Public Utilities Commission, and there may have been found a more simple and less expensive method of providing switching facilities for the applicant.
But be that as it may, in our view, the Commission was not concerned with conditions existing prior to the filing of the application by the Queen City Company. That company was asking for a switch connection with a siding established on the right of way of the Railway Company. It was owned by the Railway Company. It was under its control absolutely. It appears that it was used for a passing siding, and, according to the testimony of the superintendent of the railroad, where a sid-> ing is used as such it cannot be used for any other purpose without the permission of the railroad company through its train dispatcher. Plaintiff in error had no interest in or right to the siding other than the right to use it in connection with its switch or spur track in the handling of its business, permission having been first obtained from the Railway Company. It is true that the cost of the change of the location of the siding and the rearranging of the yard was paid for by plaintiff in *296 error, but that was done voluntarily under a private agreement entered into by that company. Its provisions had been fully complied with and the matter was a past transaction. We do not see how it could be the subject of inquiry on the part of the Commission. When application was made by the Queen City Company the siding was the property of the Railway Company, and a part of its sys-. tern. It was wholly immaterial whether the cost incident to the change of the location of the siding was paid for by the Railway Company or by plaintiff in error. When the cost incident to the change of the location was paid by plaintiff in error, it did not reserve or pretend to reserve to itself any control or interest therein other than the mere right to use it for the purpose we have mentioned. We do not see, therefore, upon what theory it could expect to dictate the terms upon which another shipper should enjoy the use of property owned by and absolutely under the control of the Railway Company. In dealing with 'the Railway Company, plaintiff in error did so with full knowledge that other shippers might demand a switch connection. It might have protected itself so that it could. have been in a position to compel a future applicant to bear a portion of the expense incurred by it. It failed to do this and there is certainly no authority on the part of the Commission to require the applicant, the Queen City Company, to do so.
In a proceeding such as the one before us, our jurisdiction is fixed by law. Unless it appears, from a consideration of the record, that the final order made by the Public Utilities Commission is *297 unlawful and unreasonable, the order cannot be disturbed. We are constrained to hold that the Commission was correct in the order made by it.

Order affirmed.

Nichols, C. J., Wanamaker, Jones, Matthias, Johnson and Donahue, JJ., concur.